UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GILBERT LOPEZ,

               Petitioner,               Civil Action No.  11-11026

v.                              HONORABLE GERSHWIN A. DRAIN
                               MAGISTRATE JUDGE MARK A. RANDON

CINDI CURTIN,

               Respondent.

_____/


## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
## GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Gilbert Lopez has filed a *pro se* habeas corpus petition challenging his state convictions for assault with intent to rob while armed, first-degree home invasion, possession of a firearm during the commission of a felony (felony firearm), and conspiracy to commit armed robbery.  He alleges that (1) he was denied a fair trial and effective assistance of counsel by evidence of other crimes, (2) the prosecutor relied on perjured testimony, (3) the prosecutor and trial court improperly bolstered the accomplices' credibility, and trial counsel was ineffective for failing to object, (4) the prosecutor's closing arguments deprived him of a fair trial, and (5) the trial court inaccurately scored the sentencing

guidelines, and trial counsel was ineffective for failing to object.  Respondent

Cindi Curtin urges the Court to deny the petition on the grounds that habeas claims

three through five are procedurally defaulted and the state court's adjudication of

the other claims was not contrary to, or an unreasonable application of, Supreme

Court precedent.  Having reviewed the pleadings and record, the Court finds that

the state appellate court's adjudication of Petitioner's claims was objectively

reasonable.  Accordingly, the petition will be denied.

## I.  BACKGROUND

Petitioner was charged in a second amended felony information with open

murder, felony murder, assault with intent to rob while armed, first-degree home

invasion, felony firearm, and conspiracy to commit armed robbery.  Before his jury

trial commenced in Genesee County Circuit Court, the prosecutor dismissed the

open murder charge.  Petitioner then proceeded to trial on the remaining charges

with Cordaro Hardy and Randy James as co-defendants.[1]

The charges arose from an attempted robbery and the fatal shooting of a

seventy-six-year-old man at his home in Flint Township early on March 4, 2007.

The evidence adduced at trial established that Petitioner's girlfriend, Tiffany

Hensley, and Ms. Hensley's family;

---

[1] Each defendant had his own jury.

2

shared a close relationship, in which the victim maintained frequent contact with Hensley and members of her family and often loaned them money[.]  [T]he plan to rob the victim arose at [Petitioner's] specific suggestion[.]  [T]he suggestion occurred at a party at a point when [Petitioner] and other robbery accomplices had imbibed significant quantities of alcohol[.]  [A]t [Petitioner's] request the carload of accomplices stopped and secured firearms before [Petitioner] directed the group on a 20-minute drive to the victim's residence[.]  [Petitioner] took the lead at the victim's residence by approaching and knocking on his back door, stepping inside, and firing a shotgun blast to the victim's chest.

*People v. Lopez*, No. 286852, 2009 WL 4981154, at *12 (Mich. Ct. App. Dec. 22, 2009).

Several other charged accomplices testified at the joint trials pursuant to plea agreements with the prosecutor:  Matthew Clement, Ricky Clements, and Cecil Thornton.  The accomplices, Tiffany Hensley, . . . and a police officer who interviewed [Petitioner] on March 5, 2007 all testified that [Petitioner] made statements incriminating himself in the robbery planning and the shooting of the victim.

*Id.*, 2009 WL 4981154, at *1.

There was additional evidence that Petitioner was hiding in a closet at a friend's house when the police went to arrest him and that he threatened to kill Tiffany Hensley if she said anything about the crime.  Wadding found in the victim's body during the autopsy was consistent with the shotgun that Petitioner supposedly used to shoot the victim.

Petitioner did not testify or present any witnesses.  His defense was that the

3

accomplices and Tiffany Hensley were liars and that, at most, he was guilty of conspiracy to engage in an unarmed robbery.

The trial court instructed the jury on the lesser-included offenses of second-degree murder and conspiracy to commit unarmed robbery for counts one and five, respectively.  On June 6, 2008, the jury acquitted Petitioner of murder, but found him guilty, as charged, on the remaining counts:  assault with intent to rob while armed, MICH. COMP. LAWS § 750.89; first-degree home invasion, MICH. COMP. LAWS § 750.110a(2); felony firearm, MICH. COMP. LAWS § 750.227b; and conspiracy to commit armed robbery, MICH. COMP. LAWS § 750.157a, MICH. COMP. LAWS § 750.529.

The trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of 225 months (eighteen years, nine months) to forty years for the assault and conspiracy convictions.  Petitioner received a consecutive sentence of 95 months (seven years, eleven months) to twenty years for the home-invasion conviction.[2]  The Michigan Court of Appeals

---

[2]  Petitioner claims in his reply to Respondent's answer that his sentences are running concurrently.  He appears to have overlooked the second page of the Judgment of Sentence, which clearly indicates that the sentence for the assault and conspiracy convictions run concurrently with each other, but consecutively to the sentence for the felony firearm conviction and that the sentence for the home-invasion conviction runs consecutively to the sentence for the assault and conspiracy convictions.

4

affirmed Petitioner's convictions and sentences in an unpublished, *per curiam* opinion, *see Lopez*, 2009 WL 4981154, and on May 25, 2010, the Michigan Supreme Court denied leave to appeal. *See People v. Lopez*, 486 Mich. 928; 781 N.W.2d 817 (2010).

On March 15, 2011, Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254. As noted above, he claims that (1) he was denied a fair trial and effective assistance of counsel by the admission of evidence of other crimes, (2) the prosecutor relied on perjured testimony, (3) the accomplices' credibility was improperly bolstered, (4) the prosecutor elicited sympathy for the victim and denigrated Petitioner, and (5) he is entitled to be re-sentenced.

Respondent argues in an answer to the petition that Petitioner's third, fourth, and fifth claims are procedurally defaulted because Petitioner failed to make contemporaneous objections to the claimed errors in the trial court.     Procedural default is not a jurisdictional limitation, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), and the Court finds it more efficient to address the merits of Petitioner's claims than to analyze whether they are procedurally defaulted. The Court therefore excuses the alleged procedural defaults and will proceed to address the substantive merits of Petitioner's claims, using the following standard of review.

## II.  STANDARD OF REVIEW

5

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

## III.  DISCUSSION

### A.  The Evidentiary Claim and Allegation of Ineffective Assistance of Counsel

Petitioner alleges that he was denied a fair trial and effective assistance of counsel by evidence of other crimes and evidence impugning his character. The disputed evidence consisted of Tiffany Hensley's testimony on cross-examination by Petitioner's attorney that Petitioner informed her about going to the north end of town and committing a robbery before he went to the victim's home. This testimony prompted counsel for Cordaro Hardy to ask Ms. Hensley whether Petitioner and two other people were involved in an incident at the victim's home in December of 2006. The prosecutor subsequently asked on re-direct examination

7

whether Petitioner told Ms. Hensley that he had robbed other people.  The

prosecutor also asked Ms. Hensley whether members of her family were unhappy

with her relationship with Petitioner and whether, as a result, there was trouble

with her family.  The Michigan Court of Appeals reviewed the record and

concluded that there was no merit in Petitioner's claim.

### 1.  "Other Acts" Evidence

To the extent that Petitioner is merely complaining about the admission of

"other acts" evidence, his claim lacks merit because

> [t]here is no clearly established Supreme Court precedent which holds
> that a state violates due process by permitting propensity evidence in
> the form of other bad acts evidence . . . .  While the Supreme Court
> has addressed whether prior acts testimony is permissible under the
> Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S.
> 172, 117 S. Ct. 644, 136 L. Ed.2d 574 (1997); *Huddleston v. United
> States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has
> not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003).  Consequently, there is no

Supreme Court precedent to which the state court's decision is contrary.

Petitioner's disagreement with the state court's ruling on "other acts" evidence

involves no constitutional dimension and, therefore, it is not a cognizable claim on

federal habeas review.  *Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007).

### 2.  The Attorneys' Questions

To prevail on his claim that trial counsel was ineffective for eliciting

evidence of other crimes, Petitioner must show that his attorney's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

### a.  Trial Counsel's Question about a Robbery

Petitioner's attorney elicited Ms. Hensley's testimony that Petitioner had told her about committing a robbery on the north end of town before the incident at the victim's home. (Trial Tr. Vol. III, 179-83, May 28, 2008.) Counsel risked

9

alienating the jury by asking Ms. Hensley about other criminal conduct committed by Petitioner, but it is clear from the record that he was attacking Ms. Hensley's credibility.  He was trying to show that Ms. Hensley made inconsistent statements to the police and was not forthcoming in her first statement to the police. Counsel's question reasonably supported the defense theory that Hensley was a liar.  (Trial Tr. Vol. VII, 123-27, June 4, 2008.)  And given the "heightened deference" accorded to an attorney's strategic decisions, *Dando v. Yukins*, 461 F.3d 791, 799 (6th Cir. 2006), the Court agrees with the state court "that defense counsel's mention of an uncharged robbery on the night of the victim's shooting did not constitute ineffective assistance of counsel."  *Lopez*, 2009 WL 4981154, at *3.

### b.  The Question by Cordaro Hardy's Attorney

Cordaro Hardy's attorney asked Ms. Hensley whether Petitioner and two other people were involved in an incident at the victim's home in December of 2006.  (Trial Tr. Vol. III, 200, May 28, 2008.)  While a response to this question could have been damaging to the defense, the Michigan Court of Appeals correctly noted that

> the jury had left the courtroom before Hardy's counsel elicited any testimony from Hensley with regard to a December 2006 "incident" at the victim's residence.  Hardy's counsel did not even specifically mention a  prior 'robbery' of the victim or any other crime in which

10

> defendant may have had involvement in December 2006.  Contrary to
> defendant's contention on appeal that 'it would have been clear to the
> jury that . . . he had attempted . . . to rob [the victim] in December of
> the previous year,' the record simply does not substantiate that his
> jury learned of a December 2006 attempted robbery of the victim.

*Lopez*, 2009 WL 4981154, at *5; *see also* Trial Tr. Vol. III, 200-07, May 28,

2008.)  Because the jury was never told about a prior attempt to rob the victim,

Petitioner was not prejudiced by the attorney's question.

### c.  The Prosecutor's Questions

On redirect examination, the prosecutor asked Ms. Hensley whether

Petitioner had told her that he robbed other people.  Petitioner's attorney initially

objected to the question, but subsequently conceded that, if the prosecutor was

referring to a robbery which occurred earlier on the night of the crime, the question

was a fair follow-up to his question on cross-examination.  The prosecutor then

rephrased her question, and Ms. Hensley responded that Petitioner had informed

her that he robbed people when he went to the north end of town.  (Trial Tr. Vol.

III, 209-10, May 28, 2008.)

The question and response were a brief part of a lengthy trial, and the issue

was not raised again.  Ms. Hensley, moreover, admitted that she did not believe

everything that Petitioner told her.  The Michigan Court of Appeals therefore

reasonably concluded that any failure by defense counsel to make an appropriate

11

objection to the prosecutor's redirect inquiries did not affect the outcome of the trial, nor deprive Petitioner of a fair proceeding.

The final questions in dispute pertain to the prosecutor's inquiry about Ms. Hensley's family.  The prosecutor asked Ms. Hensley whether members of her family were unhappy about her relationship with Petitioner and whether there was "some trouble now and then."  Ms. Hensley responded, "Yes," to both questions. (*Id.* at 93.)

This matter was not raised again, and it was an insignificant issue in a lengthy trial where the evidence against Petitioner was overwhelming.  The Michigan Court of Appeals therefore correctly concluded that the prosecutor's questions and Ms. Hensley's responses did not affect the outcome of the trial.

### 3. Conclusion

Petitioner's challenge to the introduction of "other acts" evidence is not a cognizable claim on habeas corpus review.  Even if it were, the disputed questions and answers were not so "fundamentally unfair" as to deprive Petitioner of due process. *Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006) (quoting *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004)).  And, for the reasons given above, the trial attorney's decision to elicit testimony about an uncharged robbery did not amount to ineffective assistance of counsel.  Therefore, the state appellate court's decision

on Petitioner's claim was objectively reasonable, and Petitioner has no right to habeas corpus relief on the basis of his first claim.

## B. Perjury

Petitioner alleges next that the three accomplices (Cecil Thornton, Ricky Clements, and Matthew Clement) perjured themselves at trial and that the prosecutor deprived him of a fair trial and due process of law by using the witnesses to support her case against him. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that, "at no point during defendant's trial did the prosecutor knowingly or negligently elicit any false testimony by the accomplice witnesses." *Lopez*, 2009 WL 4981154, at *7.

The Supreme Court has said that prosecutors may not deceive a court and jurors by presenting evidence that they know is false, *Giglio v. United States*, 405 U.S. 150, 153 (1972), nor allow false testimony to go uncorrected when it appears, *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But to prevail on a claim that the prosecutor relied on false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Amos v. Renico,* 683 F.3d 720, 728 (6th Cir.), *cert. denied*, __ U.S. __, 133 S. Ct. 664 (2012); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

13

All three of the accomplices who testified at Petitioner's trial admitted to lying before Petitioner's trial. Matthew Clement testified that he lied to the police about seeing Cordaro Hardy with a gun. (Trial Tr. Vol. VII, 10, June 4, 2008.) Ricky Clements also testified that he lied to the police (Trial Tr. Vol. VI, 89-90, 96, June 3, 2008), and he admitted to giving inconsistent testimony in other court proceedings (*id*. at 103-09). Cecil Thornton testified that he lied to the police (Trial Tr. Vol. V, 13, 21, 23, 33, 106, May 30, 2008), to the judge who presided over his guilty plea (*id*. at 132-33), and even to the jury (*id*. at 81).

The fact that the witnesses may have lied or omitted details of the crime in their statements to the police does not mean that they committed perjury at Petitioner's trial. "[A]n accused may give inaccurate testimony due to confusion, mistake, or faulty memory," *United States v. Dunnigan*, 507 U.S. 87, 95 (1993), and mere inconsistencies in testimony do not establish the knowing use of false testimony. *Lochmondy*, 890 F.2d. at 822 (citing *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987)). The record indicates that the accomplices were scared or unwilling to implicate themselves and their friends or relatives when they talked to the police. At trial, they were occasionally confused by the attorneys' references to prior proceedings, and they found it difficult to remember what they had said on previous occasions.

14

Cecil Thornton's testimony that he lied to the jury is somewhat troubling, but the lie that he admitted to making concerned whether he saw co-defendant Randy James with a gun.  (Trial Tr. Vol. V, 80-81, May 30, 2008.)  Whether or not Mr. James had a gun was not a critical fact in the case against Petitioner. Furthermore, the attorneys exposed Thornton's lies and inconsistencies to the jury, and Thornton's testimony on the main issue of Petitioner's involvement in the crimes was corroborated by other witnesses and by Petitioner's own statement to the police.  Thus, even assuming that Thornton made false or inconsistent statements, there is not a "reasonable likelihood that the false testimony could have affected the judgment of the jury."  *Lochmondy*, 890 F.2d at 822.

To summarize, Petitioner has failed to show that the accomplices' testimony on the main issues was actually false, that any false statements were material evidence, and that the prosecutor knowingly presented false testimony.  Petitioner therefore has no right to relief on the basis of his perjury claim.

## C.  The Accomplices' Credibility

The third habeas claim alleges that the prosecutor's comments and the trial court's jury instruction about the accomplices' anticipated sentences improperly bolstered the accomplices' credibility and implied that they would face the same punishment as Petitioner.  Petitioner further alleges that his trial attorney's failure

15

to object to the prosecutor's comments and the trial court's instruction amounted to ineffective assistance of counsel.

### 1. Clearly Established Federal Law

To prevail on his claim about the prosecutor's comments, Petitioner must demonstrate that the prosecutor's conduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "Prosecutorial argument must be so egregious . . . as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). Federal courts in this Circuit

> apply a "two-part test to determine whether the state court reasonably applied the federal standard in holding that prosecutorial misconduct did not render [the petitioner's] trial fundamentally unfair." *Irick v. Bell*, 565 F.3d 315, 324 (6th Cir. 2009). [Courts] first determine whether the prosecution's conduct was improper. *Id*. Second, [courts] determine whether that improper conduct was flagrant by considering four factors: "(1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id*. (internal quotation marks omitted).

*Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir.), *cert. denied*, __ U.S. __, 133 S. Ct. 311 (2012).

The pertinent question on habeas review of a jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction

violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  To obtain habeas relief, the instruction must have infused the trial with unfairness.  *Id*. at 75 (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)).  Finally, to demonstrate that trial counsel was constitutionally ineffective for failing to object to the prosecutor's conduct and the trial court's jury instruction, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

## 2.  Application

The record reveals that co-defendants Cecil Thornton and Ricky Clements pleaded guilty to assault with intent to rob while armed and felony firearm.  (Trial Tr. Vol. IV, 205, May 29, 2008 (Cecil Thornton); Trial Tr. VI, 44, June 3, 2008 (Ricky Clements.))  The assault charge carries a penalty of any term of years or life imprisonment.  MICH. COMP. LAWS § 750.89.  Matthew Clement pleaded guilty to conspiracy to commit unarmed robbery (Trial Tr. Vol. VI, 200, June 3, 2008), a felony which has a maximum penalty of fifteen years.  MICH. COMP. LAWS §§ 750.157a(a) and 750.530(1).

### i. The Prosecutor's Closing Argument and the Trial Court's Instruction on the Accomplices' Anticipated Sentences

The prosecutor stated in her closing argument that the two accomplices who

went to the scene of the crime and who pleaded guilty to a felony and a weapons

offense (Cecil Thornton and Ricky Clements) would "face life in prison for their

participation in this homicide."  (Trial Tr. Vol. VII, 103, June 4, 2008.)

The prosecutor correctly stated the maximum penalty for Thornton's and

Clements' crime of assault with intent to rob while armed.  The Michigan Court of

Appeals therefore correctly determined that the prosecutor's comment did not

amount to prosecutorial misconduct.

The prosecutor, however, also said:

> When you consider that as a motive to lie, there is some way on
> a scale of how much of a benefit that is for a person that's why there
> is rare instances when a jury learns the crime penalties should be the
> exact same crime as the defendant is charged with.  You can't
> consider those penalties.  The knowledge of those penalties when you
> determine whether or not Mr. Lopez is guilty of any of the crimes in
> which he is charged.  You are provided that information to help you
> determine what motive or benefit that the accomplice witness may
> have when giving his testimony.

(*Id*.)

Petitioner claims that these comments were misleading and that the trial

court reinforced the misleading argument by instructing the jury that the three

accomplices faced life in prison.  The court said:

> You have also heard evidence that [Cecil Thornton, Ricky
> Clements, and Matthew Clement] face the possible penalty of life in
> the state's prison as a result of those charges.  You are to consider this
> evidence only as it relates to that witness's credibility and as it may

18

tend to show the witness's bias or self interest.

(*Id*. at 174.)

Although the trial court erred when it said that Matthew Clement faced life in prison,[3] Mr. Clement explained his plea bargain to the jury and testified that he was facing a maximum penalty of fifteen years in prison.  (Trial Tr. Vol. VI, 200-02, June 3, 2008.)  Consequently, the trial court's error could not have had a "substantial and injurious effect or influence" on the jury's verdict and was harmless.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### ii.  The Prosecutor's Comments on Rebuttal

In her rebuttal argument, the prosecutor stated:

> You cannot consider the punishment that the testifying co-defendant received and your knowledge of what crimes are punishable by when you decide what to find that man guilty of.
>
> You have to look at the facts.  And whatever the crime that those facts deem he is guilty of it is the facts in whatever the crime that you are required to convict him of.  Irrespective of your knowledge of penalties.  Remember, penalties can be used to evaluate the bargain method . . . .

(Trial Tr. Vol. VII, 142-43, June 4, 2008.)

---

[3] Matthew Clement's crime (conspiracy to commit unarmed robbery) carried a maximum penalty of only fifteen years.  *See* MICH. COMP. LAWS  §§ 750.157a(a) and 750.530(1).

Petitioner interprets these comments to mean that the jurors could not consider the sentences which the accomplices were avoiding by testifying against him. But the prosecutor appears to have been saying that the jurors could not consider the penalty for Petitioner's crimes, even though the penalty was revealed during the accomplices' testimony. This was a correct statement of the law in Michigan. *See In re Spears*, 250 Mich. App. 349, 352; 645 N.W.2d 718, 720 (2002) (stating that "references to the disposition of the accused after the verdict are proscribed throughout the entire trial process, including voir dire, arguments of counsel, and jury instructions"). Therefore, the prosecutor's comments did not result in misconduct.

### iii. Trial Counsel's Failure to Object

The Court concludes that the prosecutor's closing and rebuttal arguments were proper and that the trial court's misstatement of the maximum penalty for Matthew Clement's crime did not deprive Petitioner of a fair trial. Consequently, trial counsel was not ineffective for failing to object to the prosecutor's comments and the trial court's jury instruction on the accomplices' potential sentences. Counsel was not ineffective for failing to make a meritless objection. *Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010).

### D. The Prosecutor's Comments about Petitioner and the Victim

20

Petitioner claims next that the prosecutor deprived him of a fair trial by eliciting sympathy for the victim and by denigrating him during closing arguments. The Michigan Court of Appeals determined on review of this claim that the prosecutor's comments, including her characterizations of the victim and Petitioner, were supported by the evidence presented at trial and by reasonable inferences arising from the evidence. The Court of Appeals also stated that, any error in the prosecutor's argument was harmless "in light of the relatively isolated nature of the remarks, the trial court's instruction that counsel's questions and statements did not constitute evidence, and the overwhelming, properly admitted evidence of [Petitioner's] guilt." *Lopez*, 2009 WL 4981154, at *12.

### 1.  Clearly Established Federal Law

Prosecutors may not incite the passions and prejudices of the jury by calling on the jury's emotions and fears, rather than the evidence, to decide the case. *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008). And even though prosecutors "may strike hard blows," they are "not at liberty to strike foul ones. It is as much [their] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935).

But "[c]laims of prosecutorial misconduct are reviewed deferentially on

habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  To

prevail on his claim, Petitioner must demonstrate that the prosecutor's conduct

infected his trial with such unfairness as to make the resulting conviction a denial

of due process.  *DeChristoforo*, 416 U.S. at 643.

### 2. Application

The prosecutor described the victim in this case as kind, generous,

compassionate, and loving.  The prosecutor also noted that the victim worked his

entire adult life and treated Tiffany Hensley like family.  (Trial Tr. Vol. VII, 84,

115-16, June 4, 2008.)  This description of the victim was supported by Tiffany

Hensley's testimony.  (Trial Tr. Vol. II, 262-63, May 23, 2008.)  Therefore, the

prosecutor's comments about the victim were not improper.

The prosecutor described Petitioner as "greedy, cocky, and full of bravado

and booze."  (Trial Tr. Vol. VII, 84-85, June 4, 2008.)  The prosecutor also stated

that Petitioner's ugliness and band of thugs entered the victim's world as a result of

the victim's decision to treat Tiffany Hensley as family.  (*Id*. at 116.)

Like the prosecutor's comments about the victim, these comments were

supported by the record.  Witnesses testified that Petitioner was so drunk on the

night of the crime that he vomited.  Witnesses also testified that it was Petitioner

who suggested robbing the victim, led them to the victim's house, stuck his foot in

22

the victim's door, and said something to the victim.  The evidence also established that Petitioner was the person who shot and killed the victim.

Nor only were the prosecutor's comments about Petitioner supported by the evidence, they were relatively mild.  Courts have upheld convictions even when the prosecutor referred to the defendant as a murderer and liar.  *See Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (concluding that, although the prosecutor's comments that the defendant was a murderer and artful liar were questionable, they were a commentary on a credibility issue and did not rise to the level of a constitutional violation); *see also United States v. Pungitore*, 910 F.2d 1084, 1127 (3d Cir. 1990) (concluding that the prosecutor's reference to a defendant as a cold-blooded murderer was a fair comment on the evidence).

The Court concludes that the prosecutor's comments about Petitioner and the victim were proper.  Even if the remarks were improper, they were not flagrant, given the strength of the evidence against Petitioner, and the trial court's jury instruction that the attorneys' arguments were not evidence.   (Trial Tr. Vol. VII, 165, June 4, 2008.)

**E.  The Sentence**

In his fifth and final claim, Petitioner alleges that he is entitled to be re-sentenced because the sentencing guidelines were scored incorrectly and he was sentenced on the basis of inaccurate information.  Petitioner also argues that trial

counsel was ineffective for failing to object to the scoring of the sentencing guidelines. The Michigan Court of Appeals held that the trial court correctly scored the offense variables and that Petitioner's attorney was not ineffective for failing to object to the scoring.

### 1.  The State Law Claim

The state court's interpretation and application of state sentencing laws and guidelines and its computation of Petitioner's prison term are matters of state law. *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003); *Kipen v. Renico*, 65 F. App'x 958, 959 (6th Cir. 2003).  "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Therefore, Petitioner's challenge to the state trial court's scoring of the sentencing guidelines is not a cognizable claim on habeas corpus review.

### 2.  The Due Process Argument

The constitutional component of Petitioner's claim alleges that the trial court deprived Petitioner of his right to be sentenced on accurate information.  A sentence violates due process of law if the sentencing court relied on "misinformation of constitutional magnitude," *United States v. Tucker*, 404 U.S. 443, 447 (1972), or on "extensively and materially false" information, which the prisoner had no opportunity to correct through counsel, *Townsend v. Burke*, 334

U.S. 736, 741 (1948).

At issue here are offense variables one and three of the state sentencing guidelines. Petitioner claims that he was scored heavily for the victim's death even though he was found not guilty of shooting the victim.

### a. Offense Variable One

 Petitioner received twenty-five points for offense variable one, which assesses aggravated use of a weapon. MICH. COMP. LAWS § 777.31(1). The trial court must assess twenty-five points if "[a] firearm was discharged at or toward a human being . . . ." MICH. COMP. LAWS § 777.31(1)(a).

More than one witness at Petitioner's trial testified that Petitioner admitted to shooting the victim with a gun, and Petitioner confessed to a police officer that he shot the victim. The trial court, therefore, did not rely on inaccurate information when the court determined that Petitioner discharged a weapon and should be assessed twenty-five points for offense variable one.

### b. Offense Variable Three

Petitioner received one hundred points for offense variable three, which addresses physical injury to a victim. MICH. COMP. LAWS § 777.33(1). A trial court must assess one hundred points if a victim was killed, MICH. COMP. LAWS § 777.33(1)(a), even if homicide is not the sentencing offense, MICH. COMP. LAWS §

777.33(2)(b).

Petitioner was acquitted of the murder charge, but a death resulted from the commission of his crimes.  Therefore, the trial court did not rely on inaccurate information when scoring offense variable three.

### 3.  Trial Counsel

Petitioner alleges that trial counsel was ineffective for failing to object to offense variables one and three.  An attorney's "failure to object to an error at sentencing or failure to raise a viable argument that would reduce his client's sentence may constitute deficient performance."  *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012).  But the disputed offense variables in this case were accurately scored, and the trial court did not rely on inaccurate information when scoring the variables.  Because the underlying issues are not meritorious, trial counsel was not ineffective for failing to object.  *Hoffner*, 622 F.3d at 509.

## IV.  CONCLUSION

The state appellate court's decision was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.

Accordingly, IT IS ORDERED that the petition for a writ of habeas corps is DENIED.

26

IT IS FURTHER ORDERED that a certificate of appealability is denied, because reasonable jurists would not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues presented are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

IT IS FURTHER ORDERED that, because Petitioner was granted leave to proceed *in forma pauperis* in this Court, he may proceed *in forma pauperis* on appeal without further authorization. Fed. R. App. P. 24(a)(3).


                                    s/Gershwin A Drain_____
                                    GERSHWIN A. DRAIN
Dated: June 27, 2013               UNITED STATES DISTRICT JUDGE

27